## GEORGE C. GRIFFITH v. WOODS LUMBER CO.

Western ·Section.   April 3, 1930.

Petition for Certiorari denied by Supreme Court, June 28, 1930.

Kyser & Allen, of Memphis, for appellee.
Harvey E. Taylor, of Memphis, for appellant.

OWEN, J.   The Woods Lumber Company, a corporation doing business in Shelby county, Tennessee, has appealed from a judgment rendered against it in favor of the complainant, George C. Griffith, a resident and citizen, of St. Louis, Missouri.   The material allegations of complainant's bill consisted of the following: "That J. G. Tarkington & Sons, on or about the 19th of May, 1925, purchased all of the standing timber on a tract of land containing about 1253 acres, lying partly in Haywood county and party in Lauderdale county, Tennessee, stating that this purchase was from T. O. Bond, et al.   That on the same day, said J. G. Tarkington & Sons con-

veyed said standing timber, thus acquired, to George C. Griffith under a mortgage, which mortgage was duly recorded in the Register's Office of Lauderdale county, Tennessee, a copy of which was exhibited with the original bill. That by the terms of this mortgage, title to that timber was to remain in George C. Griffith until he was either paid $6 per thousand on any such timber cut and removed from the land, or until a contract was made with a responsible party to pay to George C. Griffith this $6 per thousand feet on any such timber cut.

"That this mortgage agreement and conveyance was made to the complainant to secure him in the payment of $7500, evidenced by note, which $7500 was the money advanced by Griffith to Tarkington, with which Tarkington made the original cash payment to Bond. That pursuant to this agreement and in compliance therewith, the said J. G. Tarkington & Sons entered into a contract with the defendant, Woods Lumber Company, by which they agreed to sell to the Woods Lumber Company all of the timber removed from said lands at a price agreed between them, with the further understanding and agreement that the defendant, Woods Lumber Company, was to pay a stumpage of $6 per thousand to the complainant pursuant to this contract. That the Woods Lumber Company did agree to pay this $6 per thousand feet on all such timber delivered to it by the said J. G. Tarkington & Sons from these lands. That the Woods Lumber Company agreed to purchase and did purchase this timber with the full knowledge, actual and constructive, that Griffith had this stumpage right, title and lien to this timber, and with the further understanding and agreement that such stumpage right, title and lien, the Woods Lumber Company would pay off promptly as the timber was received by it from the said J. G. Tarkington & Sons at $6 per thousand feet.

"That pursuant to this contract agreement and notice, the Woods Lumber Company did pay to George C. Griffith part of the stumpage on timber so received under this contract with Tarkington, but that since February 2, 1926, the Tarkingtons, of this timber, had sold and delivered to the Woods Lumber Company, some 600,000 feet of logs, and that the Woods Lumber Company had refused to pay to Griffith the $6 per thousand due on this remaining 600,000 feet. That repeated demands had been made for this amount of money with no result, wherefore, suit was brought against the Woods Lumber Company for the $6 per thousand feet, or a total of $600 on account of this agreement. The mortgage contract between J. G. Tarkington & Sons and Griffith was exhibited with the bill."

The answer of the defendant denied the material allegations of the bill and alleged that it had bought the timber from the Bond lands from the Tarkingtons, or rather had the contract from the Tarkingtons to buy one million feet of logs f. o. b. cars at a certain price

according to grade and according to character of timber, logs to be f. o. b. cars at Rialto, or Henning, on the I. C. Railroad. The contract or agreement between the Tarkingtons and the defendant was made an exhibit to the answer.

The defendant also pleaded the statute of frauds and that the complainant had waived a lien on said timber, but permitted Tarkington to sell and had denied the delivery of the amount of the logs as claimed by the complainant. The Chancellor sustained complainant's bill. He filed a lengthy finding of facts; also a written opinion which appears in the transcript and the opinion is as follows:

"The mortgage contract between the Tarkingtons and Griffith specifically provides that the Tarkingtons "Will make a contract with the parties to whomsoever they may sell said timber that $6 per thousand is to be held by the purchaser and paid over to the party of the second part." (Griffith).

"J. G. Tarkington testified that he did make an agreement with defendant that it would pay $7 per thousand feet to the bank at Brownsville, on the Bond contract, and $6 per thousand feet to Griffith. Haynie, representative of defendant, denies such agreement was made and he and Wood assert they never heard of, or had any knowledge of, the Griffith contract. They admit knowledge of the Bond transaction and show that on December 15, 1925, defendant advanced $6,500 to take up the first of the Bond notes made by the Tarkingtons. On the issue of fact as to whether or not defendant agreed to pay Griffith $6 per thousand feet, it appears to me that Tarkington's testimony on the point is more reasonable, than the denials of Haynie and Wood. Tarkington was required by his contract with Griffith to make such agreement with the purchaser of the logs. This was a condition named in the contract. It was provided then in the event of the failure of the Tarkingtons to carry out the provisions of the contract that Griffith should have the right to take over the timber and contracts. Thus there was compelling reason why J. G. Tarkington should have an agreement with defendant to pay Griffith the $6 per thousand feet. From defendant's standpoint, there could have been no reason why it should not agree to pay Griffith $6 per thousand out of the purchase price of the logs. It was not money out of defendant's pocket. Wood, it appears from his own testimony (Ans. 5) knows nothing about the defendant's contract with Tarkington, except what was told him by Haynie. It appears that Haynie looked after the transaction and himself dictated Tarkington's letter to defendant of October 29, 1925, which constitutes the contract for the sale of the logs to defendant. Haynie left out of this letter any reference to the payment of $6 per thousand feet to Griffith; but it was understood, according to the testimony of Tarkington, that this sum should be paid Griffith. It is not reasonably possible, as I see it, to read the correspondence between

Griffith and defendant, and the testimony, of J. G. Tarkington and defendant's bookkeeper, Tribble, and find otherwise than that defendant knew from the beginning of the transaction that $6 stumpage, per thousand feet, was owing Griffith and that defendant was to pay it out of the purchase price of the logs.

"The agreement made by defendant with Tarkington & Sons to pay Griffith the stipulated amount of $6 per thousand feet of logs was an agreement made for the benefit of Griffith, was a part of the trade for the logs and, wherefore, for a valuable consideration; and, hence, may be enforced by him. A beneficiary of a contract, though not a party thereto, may sue in his own name. Title Guaranty & Trust Co. v. Bushnell, 143 Tenn., 681; Disney Bros. v. Campbell County, 6 Tenn. App., 569.

"On February 2, 1926, defendant definitely and specifically recognized Griffith's right to collect stumpage by actually paying him $6 per thousand on all logs "to date." Had defendant refused to pay Griffith anything, or had notified him that it would pay no further stumpage, Griffith could have taken steps to protect himself. Not until the coming in of the answer in this case did defendant ever deny or challenge Griffith's right to collect his stumpage on the logs received from Tarkington. When Griffith in his letter of September 29, 1926, said "You were aware that I had a mortgage on the timber when you bought the logs, and agreed with Tarkington to pay me the stumpage direct at $6 per thousand feet," defendant in its reply made no denial of Griffith's assertion, but contented itself by stating that certain of the logs had been attached by the Bank at Brownsville. Griffith replied to this and stated of course, that he was asking for stumpage only on logs actually received by defendant.

"Learned counsel in this case have discussed the question of whether or not the logs cut from the timber under mortgage to Griffith continued subject to the mortgage, until all the conditions set forth in the mortgage contract were complied with, and whether or not title to the logs passed to defendant when loaded on cars. These are not the determinative questions in the case. The sole question, is, according to my views, whether or not defendant knew of Griffith's right to stumpage and agreed with Tarkington to pay it to Griffith. Unquestionably, title to the logs did pass to the defendant and passed free of mortgage lien; but a part of the trade was that defendant from out of the purchase price of the logs would pay Griffith the $6 per thousand feet. This agreement was essential to the trade; without such agreement, Griffith could have taken over the timber and contract. Defendant, in part, did keep its engagement, but after paying Griffith stumpage on 312,164 feet proceeded to apply the whole of the purchase price of logs thereafter delivered to reimbursing itself for advancements made Tarkington. But for

the fact the logs not delivered to defendant were sold under foreclosure of the Bond lien, I believe defendant would have gone ahead and paid Griffith. This foreclosure was in July, 1926. In my opinion, complainant is entitled to recover of defendant the sum of $6 per thousand on 388,150 feet of logs.

"D. W. DeHaven,
"Chancellor.
"December 16, 1929."

The defendant perfected an appeal to this court and has assigned ten errors. These errors will be grouped as follows: Group 1 which embraces assignments 1 and 2, insists that the bill does not state a cause of action and that the decree of the Chancellor is coram non judice and void, because the decree is beyond the fair scope of pleadings.

Group 2 embraces assignments 3 to 6 inclusive, in which it is insisted that there is no evidence to support the findings of the Chancellor, or that the evidence clearly preponderates in favor of the defendant and there is a material variance between the allegations of the bill and the proof and that the variance is fatal.

By the third group, which embraces the remaining four assignments, it is insisted that the Chancellor was in error in holding the defendant liable for any amount and in holding that the defendant had actual and constructive knowledge of the mortgage that the Tarkingtons had given the complainant and holding that there was a consideration for the making of a promise by the defendant with Tarkington to pay the complainant $6 per thousand on the logs received from the Bond tract of land and in holding that the complainant could maintain an action against the defendant as beneficiary under the promise of the defendant to pay $6 per thousand, unless complainant should show a loss.

A lawsuit between the First State Bank of Brownsville, the assignee of notes Tarkington & Sons executed to the Bonds for the purchase of the timber on the Bond tract and against the Tarkingtons and the Woods Lumber Co. as defendants, was considered in this court at a former term. Counsel for appellant and also counsel for appellee referred to this record and have, by agreement, filed the record of the First State Bank v. Tarkington, et al., from Haywood county, as an exhibit to their briefs and asked this court to consider the record in the case coming from Haywood Chancery Court. We cannot consider that record in disposing of this case because it was not before the Chancellor when he considered the instant case; however, we have again read the record in the case coming from Haywood Chancery Court and it does not aid or assist the appellant in the instant case. If we could consider that case along with the present case, it would be more hurtful to appellant than it would be helpful.

As to the first group of assignments, we are of the opinion that the allegations of the bill are sufficient to appraise the defendant of the nature of the claims made by complainant and the defendant was fully informed as to what it had to meet by way of defense. It sets out the agreement between complainant and Tarkington, that this agreement had been recorded in Lauderdale county in which a part of the land was situated on which the timber sold to Tarkington was standing; that Tarkington & Sons had sold the timber to the defendant; that it had been removed from the lands at a price agreed on between the Tarkingtons and defendant and that the defendant had agreed to pay complainant $6 per thousand. The contract was made an exhibit to the bill.

It was alleged that the defendant agreed when it purchased the timber or logs from the Tarkingtons that it would pay complainant $6 per thousand on all timber delivered to defendant by said Tarkingtons from said lands. It is further alleged that the defendant had actual and constructive knowledge as to complainant's rights under said conveyance from Tarkington to complainant and that it was further alleged that the defendant in deference to said rights of complainant had paid complainant a part of the sum due complainant and that the last payment made to complainant was on February 2, 1926, and that complainant had made repeated demands since February 2, 1926, for the balance due him, but the defendant had failed to pay any further sum.

We are of the opinion that the bill sets out a cause of action; there was no demurrer and no motion or request that the bill be made more specific. Furthermore, we are of the opinion that the decree conforms to the prayer of the bill and the decree of the Chancellor is not coram non judice. The first group of assignments is overruled. Winn v. Mutual Life Assn., 100 Tenn., 359, 47 S. W., p. 93; Heggie v. Hayes, 141 Tenn., 219, 208 S. W., 605.

A beneficiary of a contract may sue thereon in his own name. Title Guaranty & Trust Co. v. Bushnell, 143 Tenn., 681, 228 S. W., 699; Disney Bros. v. Campbell County, 6 Tenn. App., 569, as to Mortgagee, Code 3705.

As to the second group touching the question of the evidence to support the decree, we are of the opinion that the Woods Lumber Company knew of the complainant's claim of the $6 per thousand feet; that they knew of this prior to the time they sent the check for something more than $1800 to complainant; and that defendant's letters to complainant establish its knowledge of his claim and the defendant remained silent after complainant made his various demands for a settlement.

We are of opinion that the defendant had lost money in dealing with Tarkington, while the defendant contracted to pay Tarkington so much per thousand for logs f. o. b. cars Rialto. It is evident that

Tarkington did not move or load these logs fast enough for the defendant. The defendant went to heavy expense in sending men to raft these logs from the lands of the grantor, Bond, and float them down Hatchie River, some distance to Rialto. Several rafts were sunk in the river and lost. That brought about a condition that caused defendant to suffer loss by reason of its contract with Tarkington & Sons. The second group of assignments is overruled.

As to the third group of assignments, it is insisted by counsel for appellant in his original brief that the complainant should have exhausted the timber held by Tarkington or from the Bond lands before he would have a right of action against the defendant. In a supplemental reply brief filed April 1st, to the argument of counsel, counsel for appellant takes the position that there has been a foreclosure of the T. O. Bond timber deed which as a matter of law wholly extinguished any and all junior liens. That a lien lost or destroyed is the same as if it had never existed. Complainant did not recover by virtue of the lien. His recovery is based upon the notice that the defendant had, that Tarkington was to pay complainant $6 per thousand for all timber cut and removed; that Tarkington would arrange with the purchaser of the timber to have complainant paid $6 per thousand. The Chancellor held that the defendant had notice to this effect and that the defendant had agreed to pay the $6 per thousand to the complainant on all logs received by defendant from Tarkington and in this finding we concur with the Chancellor and find from the weight of the evidence that the defendant knew of complainant's right and agreed to pay the complainant the $6 per thousand on all logs received by defendant and made one payment in conformity to this understanding. The question of the waiving of the lien or the losing of the lien is immaterial.

It results that all the assignments of error are overruled and disallowed. The judgment of the lower court is affirmed. The complainant will recover of the defendant and its sureties on appeal bond the amount of the judgment rendered in the lower court with interest thereon from the date of its rendition and all costs of the cause for which execution will issue.

Heiskell and Senter, JJ., concur.